IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2002 Session

## IN RE: THE ESTATE OF MARTHA G. SPENCER, Deceased

**Appeal from the Chancery Court for Marshall County**
**No. 11410     J. B. Cox,  Chancellor**

---

**No. M2001-02187-COA-R3-CV - Filed November 26, 2002**

---

The origin of this appeal was a claim made against the Estate of Martha G. Spencer, by NHC Health Care of Lewisburg, a skilled nursing home, for services rendered her in the amount of $25,934.54.[1] After a plenary trial the Chancellor dismissed the claim upon finding that NHC was estopped from pursuing its claim because of representations made that Ms. Spencer's expenses were covered by Medicare.  NHC appeals.  We affirm.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Robert O. Binkley, Sr., Lewisburg, Tennessee, for the Appellant, NHC Health Care

Barbara G. Medley, Lewisburg, Tennessee, for the Appellee, The Estate of Martha G. Spencer

**OPINION**

Although NHC raises several issues, we deem the critical issue raised is whether NHC can be estopped when its representations to Ms. Spencer's kin were not known by NHC to be false.

---

[1]     $11,317.67 of this claim represented payments made by Ms. Spencer's supplemental carrier, which is only owed if Ms. Spencer was Medicare eligible.  NHC refunded this amount to her supplemental carrier the day before trial but, of course, subsequent to its filing a claim including it.

As this is a non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn.R.App.P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the trial court's factual findings. Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 35 (Tenn. 1996).

The facts pertinent to disposition of this appeal, which were presented to the Trial Court by way of stipulation and testimony, are relatively undisputed.

On October 19, 1999, Ms. Spencer was admitted to NHC pursuant to a contract signed by her niece, Emma Crutcher, who, along with her husband, Donald Crutcher, was personal representative named in Mrs. Spencer's will.

Ms. Spencer died testate on February 23, 2000. During her stay at the nursing home all her bills were paid by Medicare. Subsequently, it developed that her eligibility to receive Medicare payments ceased because of previous payments made by Medicare for her confinement in another nursing facility. Whereupon, Medicare withheld from NHC payments otherwise due to recoup the payments improperly made on behalf of Ms. Spencer.

At the time of Ms. Spencer admission, employees of NHC represented that she had coverage for her confinement and continued to do so on numerous occasions up to and including the date of her death. Ms. Crutcher's testimony in this regard is as follows:

> Q. And when you initially talked to Ms. Hudson,[2] did you tell her about Ms. Spencer's prior hospitalizations?[3]
>
> A. Yes, ma'am. Me and my daughter told her about all of the stuff she had been in that year. We told her to check, to be sure with Medicare, to make sure how many days because my daughter's a CNA. And we were going to take her home if she didn't have enough days.

---

[2] Janet Hudson was Social Director for NHC.

[3] The brief of NHC explains those eligible for Medicare payments as follows:

Medicare pays for a person to stay 100 non-consecutive days in a skilled nursing facility. If a person is out of skilled nursing facility for more than 60 consecutive days, the 100-day benefit begins anew. If a person uses a portion of the 100 non-consecutive days and returns to a skilled nursing facility before a break of 60 consecutive days, the first return day is counted as the next day in the 100 non-consecutive days. Example: A patient is in a skilled nursing facility for 30 days, discharged and not admitted to a skilled nursing facility for 70 days; the patient is entitled to a new 100 days; however, if the patient returns to the skilled nursing facility after 45 days, the first day of the second admission is the 31st day of the original 100 days.

And Ms. Hudson promised us she had enough days.

Q.      So your daughter is a certified nursing assistant?

A.      Yes, ma'am.

Q.      She's worked in a nursing home before?

A.      Yes, ma'am.

Q.      And you all would have taken care of her if you had known that Medicare wasn't going to cover it?

A.      Yes, ma'am.

. . . .

Q.      Did she have a 60-day break in her stay?

A.      I ain't real sure because she had – she had a time where her TennCare was taking her. And she – she – the lady left her in the van. And my aunt had kidney failure. She was on a dialysis machine, and she didn't know that she was getting too hot, and the woman thought she was cold because she had a coat on. And she overheated and liked to die then. So she was probably in there two days.

Q.      In the hospital for two days?

A.      Uh-huh.

Q.      And would that have been in between July and September, or do you know?

A.      I don't really recall.

Q.      Okay.

A.      But it could have been. I don't think so, but it could have been.

. . . .

Q.      Based upon your knowledge of Ms. Spencer's prior hospitalizations, did you tell NHC where she had been and the number of days she had been there?

A.    Well, I didn't tell them the number of days. But I told them that they needed to check with Medicare. And Janet Hudson told me she had checked with Medicare, and she did have days.

Q.    Now, while she was there from October until February, did you ever inquire again as to whether she had days left or eligible days?

A.    Yes, ma'am. My daughter and me and my husband went up there every week, sometimes two or three times a week. And we asked Ms. Hudson, "Are you sure she's got days?"

And she'd say, "I promise you, she's got days."

Q.    And the day that she died, you went up there?

A.    Yes, ma'am. And she came running back there to console us over our loss. And she said, "You just made it. I called Medicare. She was two days from being out of here."

Q.    And you were back out there several days after her death?

A.    Yes, ma'am. We went back out there to make sure we didn't owe them nothing, me and my husband and my daughter.

Q.    And what were you told then?

A.    That we didn't owe anything.

Notwithstanding the foregoing representations to the Crutchers, NHC did not know at that time that Ms. Spencer had used all but three days of her entitlement to Medicare benefits.

Tennessee Jurisprudence, Volume 11, Estoppel § 25, with appropriate case citations, states the following:

§ 25.  **Basis and Object of Doctrine.** – Generally, an equitable estoppel arises, when one by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

It is true that the cases decided by Tennessee appellate courts do not use the language "culpable negligence." However, it is found in a Federal District Court opinion authored by Judge Robert L. Taylor, *Sigmon Fuel Co. v. Tennessee Valley Authority*, 531 F.Supp. 80 (1982).

We believe under the particular circumstances of this case, the fact that our Supreme Court has held "the doctrine of equitable estoppel is constantly growing,"[4] and the repeated assurance that Ms. Spencer's expenses were covered by Medicare, NHC was egregiously negligent and it was appropriate to apply the doctrine of estoppel.

We say this because NHC dealt with Medicare on practically a daily basis and would be expected to have much more knowledge of the rules and regulations promulgated by Medicare than Ms. Spencer or the Crutchers.

We accordingly concur in the findings of fact and conclusions of law of the Chancellor and affirm the judgment entered below.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against NHC Health Care, Lewisburg.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

---

[4] *Giles County Board of Education v. Hickman*, 547 S.W.2d 944 (Tenn. 1977), quoting with approval from *Saylor v. Trotter*, 255 S.W. 590 (Tenn. 1923).